**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION**

| | |
|---|---|
| OLMAN ELIAS NAVARRO-RIVERA, | ) |
|       Petitioner, | ) |
| | ) |
| v. | ) |
| | ) |
| BRIAN ACUNA, Acting Field Office | ) |
| Director of Immigration and Customs | ) |
| Enforcement, New Orleans Field Office, | ) |
| Immigration and Customs Enforcement; | ) |
| TRINITY MINTER, Warden of West | ) |
| Tennessee Detention Facility; TODD | )     No. 2:25-cv-03034-SHL-atc |
| LYONS, Acting Director of Immigration and | ) |
| Customs Enforcement; KRISTI NOEM, | ) |
| Secretary, U.S. Department of Homeland | ) |
| Security; PAMELA BONDI, U.S. Attorney | ) |
| General; SIRCE OWEN; U.S. | ) |
| DEPARTMENT OF HOMELAND | ) |
| SECURITY; and U.S. IMMIGRATION AND | ) |
| CUSTOMS ENFORCEMENT, | ) |
|       Respondents. | ) |

**ORDER GRANTING PETITION**

On November 11, 2025, Petitioner Olman Elias Navarro-Rivera filed a petition for writ

of habeas corpus under 28 U.S.C. § 2241 after he was held in immigration detention without a

bond hearing. (ECF No. 6.) He seeks either immediate release or a bond hearing before an

immigration court, and an award of attorney's fees under the Equal Access to Justice Act. (Id. at

PageID 26.) On November 17, 2025, the Court issued an order requiring Navarro-Rivera to

supplement his petition with sufficient facts "as to why he should not be considered an 'arriving

alien' under 8 U.S.C. § 1225" and requiring Respondents to respond. (ECF No. 7 at PageID 38–

39.) Navarro-Rivera filed his supplemental facts on November 22. (ECF No. 8.) Respondents

filed the response on November 28. (ECF No. 11.)

In addition, on December 4, 2025, Navarro-Rivera filed the Motion to Enforce Class Declaration and Order Reclassification of Detention under INA § 236 With Expedited Bond Hearing.  (ECF No. 16.)  The Motion requests that this Court declare Navarro-Rivera a member of the nationwide class under <u>Maldonado-Bautista v. Santacruz</u>, 5:25-cv-01873-SSS-BFM, 2025 U.S. Dist. LEXIS 231977 (C.D. Ca. Nov. 25, 2025), and grant him the same relief sought in the Petition: declaration that his detention is governed by 8 U.S.C. 1226(a), and release or a bond hearing.  (<u>Id.</u> at PageID 138–39.)

For the reasons explained below, Navarro-Rivera is entitled to immediate release, the Petition is **GRANTED,** and the Motion to Enforce Class Declaration is **DENIED AS MOOT**.

## <u>BACKGROUND</u>

The facts here are not in dispute.  Navarro-Rivera, a Honduran citizen, left his country of origin, traveled for several days, and entered the United States on August 17, 2015, near Hidalgo, Texas.  (ECF No. 8 at PageID 41.)  He was age sixteen at entry.  (ECF No. 11-1 at PageID 62.) United States Border Patrol Agents encountered Navarro-Rivera in the Rio Grande Valley and determined that he "had unlawfully entered the United States from Mexico."  (<u>Id.</u> at PageID 63.) Thus, agents arrested him, transported him to McAllen Station, and advised him of the subsequent administrative proceedings that he faced.  (<u>Id.</u>)

On September 10, 2015, the U.S. Department of Health and Human Services Office of Refugee Resettlement released Navarro-Rivera to his sister, who lived in Philadelphia, Pennsylvania.  (ECF No. 11-2 at PageID 65.)  He has remained in the United States since entry. (ECF No. 8 at PageID 41.)

Navarro-Rivera has been arrested three times.  First, on May 21, 2021, "he was arrested for shoplifting merchandise worth less than $500 in Horn Lake, Mississippi."  (ECF Nos. 11 at

PageID 53; 12-1 at PageID 94.)  Relatedly, he was charged with contempt of court for failing to

appear at his subsequent court date in Horn Lake Municipal Court.  (ECF No. 12-2 at PageID

99.)  Second, on May 8, 2022, Navarro-Rivera was arrested for driving under the influence and

possession of alcohol in a motor vehicle in Louisiana.  (ECF No. 12-1 at PageID 96.)  Third, on

March 7, 2024, Navarro-Rivera was arrested and charged with domestic assault and aggravated

assault in Shelby County, Tennessee.  (ECF No. 12-1 at PageID 98.)  The record does not show

that he was convicted of any of these crimes.

Navarro-Rivera had additional immigration proceedings well after his entry.  He obtained

"Special Immigrant Juvenile Status" when his I-360 application was approved on August 19,

2019.  (ECF No. 11 at PageID 52.)  Further, the Department of Homeland Security ("DHS")

initiated removal proceedings against Navarro-Rivera, but an Immigration Court administratively

closed the case on March 28, 2022.  (ECF No. 11-3 at PageID 71.)  DHS filed a motion on July

28, 2025, to reopen those removal proceedings, and that motion remains pending.  (ECF No. 11-

4 at PageID 72–73.)

Navarro-Rivera was apprehended on November 2, 2025.  (ECF No. 8 at PageID 41.)  He

remains in custody at the West Tennessee Detention Facility in Mason, Tennessee.  (ECF No. 6

at PageID 20.)  He filed the operative Petition on November 12, the crux of which is that his

continued detention without a bond hearing pursuant to 8 U.S.C. 1225 violates his Fifth

Amendment due process rights.  (ECF No. 6-2 at PageID 31–35.)

Indeed, under recently adopted guidance from DHS and ICE, Navarro-Rivera is subject

to mandatory detention under 8 U.S.C. § 1225(b)(2)(A) of the INA and was declared ineligible to

be released on bond.  Until recently, however, most noncitizens in this situation were given bond

hearings under a different provision, § 1226(a).  See, e.g., Cruz Ruiz v. Harper, 2:26-cv-02092-

SHL-atc, ECF No. 13 (W.D. Tenn. Feb. 18, 2026); <u>Castaneda-Mondragon v. Acuna</u>, No. 25-cv-03044, ECF No. 13 at PageID 101 (W.D. Tenn. Dec. 30, 2025); <u>Godinez-Lopez v. Ladwig</u>, No. 25-CV-02962, 2025 U.S. Dist. LEXIS 215076, at *3–4 (W.D. Tenn. Oct. 31, 2025).  Section 1226(a) allows immigration authorities to release immigrants from detention on a bond of $1,500 or more, unless they require detention for certain reasons.  For example, noncitizens with certain criminal records may not be released on bond.  8 U.S.C. § 1226(c)(1), (c)(1)(E).

Section 1225(b)(2)(A), on the other hand, prohibits a bond for all "applicants for admission" who are "seeking admission."  "Applicants for admission" has been interpreted to mean recent arrivals, including those who have not been "physically present in the United States continuously" for the previous two years.  <u>See</u> 8 U.S.C. § 1225(b)(1)(A)(iii)(II) ("An alien described in this clause is an alien who . . . has not affirmatively shown . . . that the alien has been physically present in the United States continuously for the 2-year period immediately prior to the date of the determination of inadmissibility . . . .").

But, on July 8, 2025, ICE, in coordination with the Department of Justice ("DOJ"), issued a new policy with a novel interpretation of §§ 1225(b)(2)(A) and 1226(a).  <u>Interim Guidance Regarding Detention Authority for Applicants for Admission</u>, AILA (July 8, 2025), https://www.aila.org/ice-memo-interim-guidance-regarding-detention-authority-for-applications-for-admission ("For custody purposes, these aliens are now treated in the same manner that 'arriving aliens' have historically been treated.").  The policy reclassified all undocumented immigrants, even those who have lived in the United States for years, as "applicants for admission."  (<u>Id.</u>)  And all "applicants for admission" are required to be detained for removal proceedings without a bond hearing under § 1225(b)(2)(A).  (<u>Id.</u>)

4

Thus, ICE's new legal interpretation makes § 1225(b)(2)(A), not § 1226(a), the statute governing removal proceedings for all immigrants without legal status. As a result, all undocumented immigrants awaiting removal are detained without a bond hearing. This new interpretation was later adopted by the Board of Immigration Appeals ("BIA") in a published decision, <u>Yajure Hurtado</u>, 29 I. & N. Dec. 216, 220 (B.I.A. 2025). (ECF No. 6 at PageID 34–35.)

Navarro-Rivera faces the risk of continued detention without a bond hearing. His Petition alleges Due Process violations under the Fifth Amendment, a violation of his Fourth Amendment right against unreasonable seizure, and a violation of the Eighth Amendment prohibition against cruel and unusual punishment. (ECF Nos. 6 at PageID 25; 6-2 at PageID 31.) He seeks (1) a declaration that 8 U.S.C. § 1226(a) governs his detention and that his continued detention violates the Fifth Amendment; (2) immediate release on reasonable bond or a bond hearing within a reasonable time; (3) and "costs and attorney's fees pursuant to the Equal Access to Justice Act." (ECF No. 6 at PageID 26.)

In response, Respondents contend that 8 U.S.C. § 1226(c)(1)(E) subjects Navarro-Rivera to mandatory detention because of his criminal record; that Navarro-Rivera failed to exhaust his administrative remedies; that § 1225 applies to him; and that, in the case that § 1226(a) applies to Navarro-Rivera, the relief granted should be a bond hearing before an immigration judge. (ECF No. 11 at PageID 54–60.)

## <u>ANALYSIS</u>

"Habeas relief is available when a person is 'in custody in violation of the Constitution or laws or treaties of the United States.'" <u>Lopez-Campos v. Raycraft</u>, 797 F. Supp. 3d 771, 776 (E.D. Mich. 2025) (quoting 28 U.S.C. § 2241(c)(3)). Navarro-Rivera challenges his detention

without bond as violative of his constitutional rights.  (ECF No. 6 at PageID 26.)  Because

exhaustion is a jurisdictional issue that could result in dismissal of Navarro-Rivera's Petition at

the outset, the Court first considers the threshold question of whether he should be required to

exhaust his administrative remedies.  Then, the statutes are construed to determine whether §

1225, § 1226(a), or § 1226(c) is applicable.  A due process analysis follows.  Finally, the

appropriate manner of relief is analyzed.

## I.    Exhaustion

If Congress "specifically mandates" exhaustion of administrative remedies, a petitioner

must pursue relief through those administrative processes before seeking habeas relief.

McCarthy v. Madigan, 503 U.S. 140, 144 (1992).  When Congress is silent on administrative

exhaustion, "sound judicial discretion governs."  Id.  Thus, the doctrine of prudential exhaustion

holds that, in the absence of a textual exhaustion requirement, courts can use discretion to refuse

to hear habeas petitions that challenge bond determinations until a petitioner exhausts available

administrative remedies.  McCarthy, 503 U.S. at 144.  The Sixth Circuit has previously applied

this doctrine to dismiss petitions for lack of jurisdiction.  See Rabi v. Sessions, No. 18-3249,

2018 U.S. App. LEXIS 19661, at 1–2 (6th Cir. July 16, 2018).  In the context of immigrant

detention, some district courts require detained immigrants to exhaust their administrative

remedies—by appealing bond decisions to the BIA and receiving adverse decisions—before the

courts will review their habeas petitions.  E.g., Villalta v. Greene, No. 25-cv-01594, 2025 U.S.

Dist. LEXIS 169688, at *6–7 (N.D. Ohio Aug. 5, 2025).

In some cases, however, exhaustion is excused, and courts review habeas petitioner

claims.  Courts have reached these conclusions when (1) "the legal question is fit for resolution

and delay means hardship, or (2) exhaustion would prove futile." Shalala v. Ill. Council on Long

Term Care, 529 U.S. 1, 13 (2000) (citation modified).

An issue is fit for judicial resolution when it presents a purely legal question. Contreras-

Lomeli v. Raycraft, No. 25-cv-12826, 2025 U.S. Dist. LEXIS 207162, at *8 (E.D. Mich. Oct. 21,

2025) (citing Loper Bright Enters. v. Raimando, 603 U.S. 369, 385 (2024)). Further, when

administrative procedures involve "an indefinite or unreasonable timeline," such delays result in

hardship. Id. If there is a risk of extended, "potentially unlawful detention" during such delay,

then exhaustion is excused. Id.

As for futility, waiver of exhaustion "is appropriate when an administrative agency 'has

predetermined the disputed issue' by having a 'clearly stated position' that the petitioner is not

eligible for the relief sought." Id. at *9 (quoting Cooper v. Zych, No. 09-CV-11620, 2009 U.S.

Dist. LEXIS 75423, at *2 (E.D. Mich. Aug. 25, 2009)).

Respondents argue that the Court should dismiss the Petition based on prudential

exhaustion, as Navarro-Rivera has not appealed to the BIA and received an adverse decision.

(ECF No. 11 at PageID 56.) They recognize that Congress has not imposed an administrative

exhaustion requirement, and that prudential exhaustion is in the Court's discretion. (Id. at

PageID 57–58.) But they point to the Sixth Circuit's opinion in Rabi v. Sessions, No. 18-3249,

2018 U.S. App. LEXIS 19661, at *1–2 (6th Cir. July 16, 2018), and certain decisions in the

Northern District of Ohio, e.g. Monroy Villalta v. Greene, 794 F. Supp. 3d 528 (N.D. Ohio

2025), which required petitioners to appeal to the BIA before seeking habeas relief under

"prudential principles of exhaustion." (Id.)

But neither 8 U.S.C. §§ 1225 nor 1226 contains a textual exhaustion requirement for

immigrants in ICE custody. Similarly, 28 U.S.C. § 2241 lacks an exhaustion requirement. And

the Sixth Circuit has not yet spoken on the issue of prudential exhaustion in these recent cases.

See Samanpreet Singh v. Stevens, NO. 26-CV-133, 2026 U.S. Dist. LEXIS 32574, at *8 (N.D.

Ohio Feb. 18, 2026).  Therefore, exhaustion may only be required here based on "sound judicial

discretion."  McCarthy, 503 U.S. at 144.  But, exhaustion may be excused if "the legal question

is fit for resolution and delay means hardship, or exhaustion would prove futile."  Shalala, 529

U.S. at 13.

Navarro-Rivera's failure to exhaust is excused.  First, the question he poses in the

Petition is fit for resolution and undue delay would impose hardship on him.  The Parties do not

dispute any material facts.  (See ECF Nos. 8 at PageID 41; 11 at PageID 52–53.)  Thus, deciding

which statute applies to Navarro-Rivera's detention is a purely legal question, "which is right in

a federal court's wheelhouse."  Contreras-Lomeli, 2025 U.S. Dist. LEXIS 207162, at *8.

Further, if Navarro-Rivera is required to pursue an appeal with the BIA, his appeal process

would likely take six months or more.  See id. (citing Pizarro Reyes v. Raycraft, No. 25-CV-

12546, 2025 U.S. Dist. LEXIS 175767, at *9 (E.D. Mich. Sep. 9, 2025)).  Bond hearings were

designed to prevent prolonged detention during removal proceedings, which are often lengthy.

Reyes, 2025 U.S. Dist. LEXIS 175767, at *9 (citations omitted).  Therefore, denying Navarro-

Rivera the chance to have a bond hearing merely because he did not appeal to the BIA (even

though he has no decision to yet appeal) may force him "to endure six months or more of

potentially unlawful detention and thus would cause him great hardship."  Contreras-Lomeli,

2025 U.S. Dist. LEXIS 207162, at *8.

Furthermore, the futility of exhaustion is an independent reason to excuse exhaustion

here.  The BIA stated in Yajure Hurtado that § 1225(b)(2)(A) applies to detained illegal

8

immigrants who "have been residing in the United States for years."  29 I. & N. Dec. at 220–21.

Thus, any appeal would be futile, and exhaustion is excused.

## II.    Statutory Interpretation

Navarro-Rivera challenges his detention, arguing that Respondents violated his

constitutional rights by pursuing his detention under § 1225, instead of § 1226(a), and seeking

immediate release or a bond hearing.  (ECF No. 6 at PageID 25–26.)  In opposition, Respondents

argue that the Court need not even reach the "§ 1225 v. § 1226" issue, as they emphasize that

Navarro-Rivera's detention without bond is lawful under the exception contained within

§ 1226(c), which applies to immigrants with criminal histories under certain circumstances.

(ECF No. 11 at PageID 54, 56.)  Respondents, however, appear to reserve their argument that, in

the case that the criminal record exception does not apply, the proper statute here is § 1225.  (Id.

at PageID 58.)  Given these arguments, and Navarro-Rivera's failure to discuss his criminal

history in detail in most of his filings, the Court first determines whether § 1225 or § 1226

applies.  Then, it proceeds to consider the applicability of § 1226(c) to Navarro-Rivera.

### A.    Detention Under § 1225 or § 1226

"A statute should be construed so that effect is given to all its provisions, so that no part

will be inoperative or superfluous, void[,] or insignificant."  Corley v. United States, 556 U.S.

303, 314 (2009) (quoting Hibbs v. Winn, 542 U.S. 88, 101 (2004)).  Each word within a statute

must be given "'its ordinary, contemporary, common meaning,' while keeping in mind that

'statutory language has meaning only in context.'"  Kentucky v. Biden, 23 F.4th 585, 603 (6th

Cir. 2022) (citation modified) (citing Walters v. Metro. Edu. Enters., Inc., 519 U.S. 202, 207,

(1997)).

Custody over noncitizens during removal proceedings is generally governed by two

statutes, 8 U.S.C. § 1225 (entitled "Inspection by immigration officers; expedited removal of

inadmissible arriving aliens; referral for hearing") and § 1226 (entitled "Apprehension and

detention of aliens").  Section 1225(b) requires mandatory detention, providing in relevant part:

> (b)     Inspection of applicants for admission
>                       . . .
> >        (2)     Inspection of other aliens
> >                (A)     In general
> >                        Subject to subparagraphs (B) and (C), in the case of an alien
> >                        who is an <u>applicant for admission</u>, if the examining
> >                        immigration officer determines that an alien seeking
> >                        admission is not clearly and beyond a doubt entitled to be
> >                        admitted, the alien <u>shall be detained</u> for a proceeding under
> >                        section 1229a of this title.

8 U.S.C. § 1225(b)(2)(A) (emphasis added).  An "applicant for admission" is a noncitizen

"present in the United States who has not been admitted."  8 U.S.C. § 1225(a)(1).  Under this

section, all applicants for admission "shall be detained."  <u>Id.</u> § 1225(b)(2)(A).

In contrast, § 1226(a) allows for discretionary detention, providing in relevant part:

> (a)     Arrest, detention, and release
>         On a warrant issued by the Attorney General, an alien <u>may be arrested and
>         detained</u> pending a decision on whether the alien is to be removed from the
>         United States.  Except as provided in subsection (c) and pending such
>         decision, the Attorney General—
>         (1)     <u>may continue to detain</u> the arrested alien; and
>         (2)     <u>may release</u> the alien on—
> >                (A)     bond of at least $1,500 with security approved by, and
> >                        containing conditions prescribed by, the Attorney General .
> >                        . . .

8 U.S.C. § 1226(a) (emphasis added).  The exception in § 1226(c) prohibits releasing on bond a

noncitizen found to be inadmissible, who <u>also</u>,

> is charged with, is arrested for, is convicted of, admits having committed, or admits
> committing acts which constitute the essential elements of any burglary, theft,
> larceny, shoplifting, or assault of a law enforcement officer offense, or any crime
> that results in death or serious bodily injury to another person . . .

Id. § 1226(c)(1)(E)(ii).  "Noncitizens arrested and detained under § 1226 have a right to request a custody redetermination (i.e., a bond hearing) before an [Immigration Judge ('IJ')]."  Lopez-Campos, 797 F. Supp. 3d at 777 (citing 8 C.F.R. § 1236.1(c)(8), (d)(1)) (citation modified).  "The IJ evaluates whether there is a risk of nonappearance or danger to the community."  Id. (citing Guerra, 24 I. & N. Dec. 37, 40 (B.I.A. 2006)).  Thus, except for those noncitizens with a record of certain criminal offenses, § 1226(a) allows immigration authorities to choose to release or detain noncitizens, subject to a hearing before an IJ on the issue.[1]

Navarro-Rivera argues that ICE's new interpretation of § 1225(b)(2)(A) violates his Fourth Amendment rights and Fifth Amendment due process rights.  (ECF No. 6-2 at PageID 31–32.)  He also argues that it violates the Eighth Amendment prohibition on cruel and unusual punishment as he is detained in a facility experiencing poor "sustenance, crowd control, and prison conditions."  (ECF No. 6 at PageID 26.)  Navarro-Rivera emphasizes that use of § 1225 here "deviates from established circuit precedent," and causes "prolonged detention in often harsh conditions."  (ECF No. 6-2 at PageID 31, 34.)  He argues that 8 U.S.C. § 1226(a) applies to his detention because he has remained in the United States for years, and is not an "arriving alien."  (ECF No. 8 at PageID 42–43.)  For these reasons, he seeks immediate release or, in the alternative, a bond hearing before an IJ.

Respondents argue that § 1225(b)(2)(A), not § 1226(a), applies to Navarro-Rivera because he "entered [the United States] without inspection or parole" and thus "remains an

---

[1] See 8 C.F.R. § 1236.1(c)(8), (d)(1) ("Any officer authorized to issue a warrant of arrest may, in the officer's discretion, release an alien . . . .  After an initial custody determination . . . the respondent may . . . request amelioration of the conditions under which he or she may be released. . . .  [T]he immigration judge is authorized . . . to detain the alien in custody, release the alien, and determine the amount of bond, if any, under which the respondent may be released . . . .").

applicant for admission who is treated, for constitutional purposes, as if stopped at the border."
(ECF No. 11 at PageID 58.)  As a result, they assert "he is subject to mandatory detention and
not entitled to a bond hearing."  (Id.)  They incorporate by reference their statutory arguments
from Godinez-Lopez and recent, similar cases in this District.  (Id. at PageID 59.)  In addition,
they assert that, since the October hearing in Godinez-Lopez, they learned of at least "two
additional cases" from the District of Nebraska and the District of Minnesota that found § 1225
applicable in similar situations. (Id. at PageID 59 (first citing Vargas Lopez v. Trump, 802 F.
Supp. 3d 1132, 1140 (D. Neb. Sep. 30, 2025); and then citing S.Q.D.C. v. Bondi, No. 25-3348,
2025 U.S. Dist. LEXIS 175957, at *6–7 (D. Minn. Sep. 9, 2025).)  Finally, Respondents argue
that, if the Court decides that § 1226 applies to Navarro-Rivera, a bond hearing should be
ordered before an IJ instead of immediate release, so the IJ can determine whether Navarro-
Rivera poses "a flight risk or a danger to the community.  (Id. at PageID 60.)

        The plain text of §§ 1225(b)(2)(A) and 1226(a) do not support Respondents' contention
that Navarro-Rivera is "seeking admission."  Beginning with the titles, the title of § 1225 is
"Inspection by immigration officers; expedited removal of inadmissible arriving aliens; referral
for hearing."  The title of § 1226(a) is "Apprehension and detention of aliens."  Although titles of
statutes are not controlling, they are "tools available for the resolution of a doubt about the
meaning of a statute."  Dubin v. United States, 599 U.S. 110, 121 (2023) (citation modified).
Here, § 1225's title describes "arriving aliens" who are placed into "expedited removal"
proceedings.  But Navarro-Rivera was not "arriving" when he was detained far away from the
United States border, after having been in this country for ten years.  (ECF No. 8 at PageID 41.)
Also, Respondents have not established that he was eligible for expedited removal proceedings.
Thus, the mandatory detention provision of § 1225 does not apply to him.

Further, the subject matter of § 1225 undercuts Respondents' reading of the statute.

Section 1225 describes the process of inspecting and removing immigrants actively crossing the

border.  See Jennings v. Rodriguez, 583 U.S. 281, 287 (2018) ("That process of decision

[described in § 1225] generally begins at the Nation's borders and ports of entry, where the

Government must determine whether an alien seeking to enter the country is admissible.").  And

Respondents' reading of § 1225(b)(2)(A) ignores several words and phrases within the statute.

"If possible, every word and every provision is to be given effect."  Antonin Scalia & Bryan A.

Garner, Reading Law: The Interpretation of Legal Texts 174 (2012).  But to apply §

1225(b)(2)(A) to Navarro-Rivera would render the following underlined words superfluous:

> [I]n the case of an alien who is an applicant for admission, if the examining
> immigration officer determines that an alien seeking admission is not clearly and
> beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding
> under section 1229a of this title.

8 U.S.C. § 1225(b)(2)(A) (emphasis added).  The record does not show that Navarro-Rivera was

seeking admission at the time of his detention, nor does it show that he had received a

determination by an immigration officer that he was "not clearly and beyond a doubt entitled to

be admitted."  The language of § 1225(b)(2)(A) makes sense in the context of the border, but not

in a situation like this, when a noncitizen has been physically present, albeit unlawfully, for a

decade.  To interpret "alien seeking admission" using its ordinary meaning but outside the

context of the provision, as argued by Respondent, is untenable.

Not only is the plain language of §§ 1225 and 1226 sufficient to support a finding in

Navarro-Rivera's favor, but the Congressional intent behind § 1226(a) is also supportive.  In

January 2025, Congress passed the Laken Riley Act ("LRA"), adding a subsection to § 1226(c)

to preclude persons with criminal histories from receiving bond under certain circumstances.

Pub. L. No. 119-1, 139 Stat. 3 (2025).  Congress would not have added exceptions to the broad

rule of § 1226(a) if, as Respondents assert, it intended § 1226(a) to give way to § 1225(b)(2)(A)

in all cases.  See Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co., 559 U.S. 393, 400

(2010) ("The fact that Congress has created specific exceptions to [a rule] hardly proves that the

[rule] does not apply generally.  In fact, it proves the opposite.").  On the contrary, Congress's

recent attention to § 1226 points to its approval of the interpretation prevailing before July 2025.

After all, "[i]f § 1225(b)(2) already mandated detention of any alien who has not been admitted,

regardless of how long they have been here, then adding § 1226(c)(1)(E) to the statutory scheme

was pointless."  Lopez-Campos, 797 F. Supp. 3d at 784 (quoting Maldonado v. Olsen, 795 F.

Supp. 3d 1134, 1152 (D. Minn. 2025)).

The plain language of § 1226 describes Navarro-Rivera's situation, and the legislative

intent behind § 1226 supports its application to him.  Section 1226 applies to the "apprehension

and detention of aliens," providing that, upon "a warrant issued by the Attorney General, an alien

may be arrested or detained pending a decision on whether the alien is to be removed from the

United States."  8 U.S.C. § 1226(a).  It also requires the Attorney General to detain any "alien"

who meets the conditions under § 1226(c).  8 U.S.C. § 1226(c)(1).  Navarro-Rivera was charged

with being removable and detained in Tennessee.  Thus, the Attorney General's actions are

governed by this Section.

### B.    Applicability of 8 U.S.C. § 1226(c)

The issue remains whether 8 U.S.C. § 1226(a) applies, or, instead, § 1226(c)(1)(E)

applies retroactively to require Navarro-Rivera's mandatory detention without a bond hearing.

This is an issue of first impression in this District.

As outlined above, 8 U.S.C. § 1226(a) allows for the Attorney General to seek, in their

discretion, to keep an immigrant detained or to release the immigrant on a "bond of at least

14

$1,500 with security approved by, and containing conditions prescribed by, the Attorney

General." 8 U.S.C. § 1226(a)(1)–(2). On the other hand, 8 U.S.C. § 1226(c) limits that

discretion by requiring mandatory detention of "any alien who" satisfies any of five listed

categories under exceptions (A) through (E). § 1226(c)(1)(A)–(E).

The LRA, enacted in 2025, amended § 1226(c) by adding exception (E), a list of

conditions for a category of aliens who must be detained without bond. Specifically, exception

(E) requires the mandatory detention of an alien if they (1) are found to be "inadmissible" and

(2) are charged with, arrested for, convicted of, or admit to committing "any burglary, theft,

larceny, shoplifting, or assault of a law enforcement officer offense, or any crime that results in

death or serious bodily injury to another person." 8 U.S.C. § 1226(c)(1)(E). Before the LRA's

addition, an inadmissible immigrant who had merely been arrested for or charged with a crime

was not subject to mandatory detention without bond. 8 U.S.C. § 1226(c)(1)(A)–(C) (2024),

amended by, 8 U.S.C. § 1226(c)(1)(A)–(E) (2025). The LRA broadened the categories of

immigrants subject to mandatory detention, adding the language "is inadmissible under

paragraph (6)(A), (6)(C), or (7) of § 1182(a) of this title, and is charged with, is arrested for, is

convicted of, admits having committed, or admits committing acts . . . ." § 1226(c)(1)(E)(i)–(ii).

However, the timing of the LRA's enactment complicates its applicability to Navarro-Rivera's

case.

Generally, courts "apply the law existing at the time of the decision as opposed to the law

existing at the time that the conduct giving rise to the case occurred." Patel v. Gonzales, 432

F.3d 685, 690 (6th Cir. 2005) (citing Landgraf v. Usi Film Prods., 511 U.S. 244, 280 (1994)).

When interpreting statutes, courts presume that statutes apply prospectively and not

retrospectively. Id. Therefore, application of a statute to past conduct is typically disfavored.

But, not all cases involving amended federal statutes and pre-amendment conduct raise retroactivity concerns.  Id.  Rather, the issue of retrospective operation arises if the statute has a retroactive effect on past conduct—when "the new provision [of a statute] attaches new legal consequences to events completed before its enactment."[2]  Landgraf, 511 U.S. at 269–70 (emphasis added).

If a statute has a retroactive effect, courts must decide "whether [it] should be applied" as such, using a two-step inquiry.  St. Thomas Hosp. v. Sebelius, 705 F. Supp. 2d 905, 919 (M.D. Tenn. 2010).  First, a "court asks whether the statute expressly provides that it is to be applied retroactively and, if so, that is the end of the inquiry."  Id. (citation modified) (citing Moses v. Providence Hosp. and Med. Ctrs., 561 F.3d 572, 583–84 (6th Cir. 2009)).  If the statute is silent as to retroactivity, a court then determines "whether applying the statute 'would have a retroactive consequence in the disfavored sense of affecting substantive rights, liabilities, or duties on the basis of conduct arising before its enactment.'"  Id. (quoting Moses, 561 F.3d at 583–84).  If the statute has such a "retroactive consequence," it should not apply retroactively. Patel, 432 F.3d at 690; St. Thomas Hosp., 705 F. Supp. 2d at 919.

Respondents argue that § 1226(c)(1)(E) applies here and renders Navarro-Rivera ineligible for bond because of his criminal history.  (ECF No. 11 at PageID 54.)  Specifically, Respondents point out that § 1226(c)'s "shall" language mandates "detention of immigrants who meet subsection (E)'s two requirements: immigrants who are inadmissible under 8 U.S.C. § 1182(a)(6)(A) . . . and who have been 'arrested for, charged with, or convicted of certain crimes.'"  (Id. at PageID 54–55 (citations omitted).)  Respondents note that Navarro-Rivera

---

[2] As noted by the Landgraf Court, relevant considerations guiding this decision about "new legal consequences" include "fair notice, reasonable reliance, and settled expectations." Landgraf, 511 U.S. at 269–70.

concedes that he is inadmissible, and assert that the second requirement is also met: they contend

that Navarro-Rivera's 2021 arrest for shoplifting falls under § 1226(c)(1)(E)(ii). (ECF No. 11 at

PageID 55 (explaining the arrest, including law enforcement's identification of Navarro-Rivera

using fingerprint records and how his crime met the elements of Miss. Code Ann. § 97-23-93)).)

 Navarro-Rivera never filed a reply to the government's Response regarding the Petition

itself, but he argues in his Reply in Support of Motion to Enforce Class Declaration (ECF No.

19) that § 1226(c)(1)(E) does not apply to him because he was not arrested, charged, or

convicted for "specified firearms" crimes. (ECF No. 19 at PageID 174 (citing 8 U.S.C.

§ 1226(c)(1)(E)).) Further, he argues, without citing any authority, that the government must

meet certain "timing requirements" when detaining an immigrant for such detention to fall

within § 1226(c)(1)(E).[3] (Id. at PageID 175.) He asserts that Respondents did not do so here.

He does not address the current text of § 1226(c)(1)(E)(ii).

 Section 1226(c)(1)(E) does not apply to Navarro-Rivera because such application would

be improperly retroactive. For starters, § 1226(c) is the law currently in effect, so it is operative.

Further, Navarro-Rivera's criminal history subjects him to mandatory detention without bond, as

he is inadmissible (because he illegally entered and remains illegally present in the U.S.) and he

was arrested for a crime enumerated in subsection (c)(1)(E)(ii). (ECF No. 12-1 at PageID 94.)

 However, application of § 1226(c)(1)(E), which was enacted in January 2025, to

Navarro-Rivera would attach new legal consequences to a past event, namely, his arrest in 2021.

---

[3] This argument appears foreclosed by the holding in Nielsen v. Preap, 586 U.S. 392,
411–12 (2019) ("Here this principle entails that even if subsection (c)(1) were the sole source of
authority to arrest aliens without granting them hearings, that authority would not evaporate just
because officials had transgressed subsection (c)(1)'s command to arrest aliens immediately
'when . . . released.'").

And <u>Landgraf</u> counsels against retroactive application here.  First, § 1226 is silent as to whether it applies retroactively.  § 1226(a)–(f).  Turning to the second step, Congress did not intend § 1226(c)(1)(E) to apply retroactively, as "[i]t lists no effective date, and its legislative history gives courts no indication that it should be applied retroactively."  <u>Patel</u>, 432 F.3d at 691.  Further, subsection (c)(1)(E) affects substantive rights or liabilities, including Navarro-Rivera's liberty, as it requires the Attorney General to detain him without bond.  <u>Cf.</u> <u>Moses</u>, 561 F.3d at 583–84 ("[B]ecause the regulation would affect the extent of the care that Howard could have expected upon admission as an inpatient, the regulation attaches legal consequences to events completed before its enactment." (quotation omitted)).  When Navarro-Rivera was arrested for shoplifting in 2021, he did not have fair notice at that time that he would be subject, four years later, to mandatory immigration detention without <u>any</u> bond hearing.  <u>See</u> <u>Cibrian Matute v. Jamison</u>, 25-cv-07093, 2026 U.S. Dist. LEXIS 32387, at *14 (E.D. Penn. Feb. 18, 2026) ("The [Supreme] Court held that because the IIRIRA attached a new disability (barrier of re-entry) to the petitioner based on a 'single crime committed years before IIRIRA's enactment,' retroactive application was impermissible.") (discussing and applying <u>Vartelas v. Holder</u>, 566 U.S. 257, 262, 272 (2012)).

Respondents' contentions otherwise are unavailing, partly because they overlook the retroactivity issue, even though Navarro-Rivera's argument that subsection (c)(1)(E) only applies to firearm offenses is a plain misreading of the statute.  Nonetheless, the presumption against retroactive legislation bars (c)(1)(E)'s application to criminal history that occurred before the Laken Riley Act's amendments.  <u>See</u> <u>Vartelas</u>, 566 U.S. at 273 ("Even when the conduct in question is morally reprehensible or illegal . . . a degree of unfairness is inherent whenever the law imposes additional burdens based on conduct that occurred in the past." (citation modified));

see also Millan v. Voorhies, NO. 25-cv-02779, 2026 U.S. Dist. LEXIS 19805, at *35 (N.D. Ohio

Jan. 30, 2026) ("[T]he government may not retroactively choose to revoke the lawfulness of his

entry in September 2023 and withdraw the discretionary bond procedures provided under

1226(a)." (footnote omitted)).

The Court notes that it does not endorse Navarro-Rivera's past criminal conduct.  The

record is undisputed that he was arrested for shoplifting, among other crimes.  But the

wrongfulness of those acts is outside the scope of this Petition, and § 1226(c)(1)(E) only applies

prospectively.  For these reasons and those discussed above, the Court finds that § 1226(a)

applies here.  Thus, Navarro-Rivera is entitled to the process included in that subsection.

## III.    Due Process

The Fifth Amendment protects every person from being "deprived of life, liberty, or

property, without due process of law."  U.S. Const. amend. V.  "The Due Process Clause extends

to all 'persons' regardless of status, including non-citizens (whether here lawfully, unlawfully,

temporarily, or permanently)."  Lopez-Campos, 797 F. Supp. 3d at 784 (citing Zadvydas v.

Davis, 533 U.S. 678, 690 (2001)).  In the context of civil immigration detention, the Sixth Circuit

applies the balancing test from Mathews v. Eldrige, 424 U.S. 319 (1976), to evaluate the level of

process owed a noncitizen.  See, e.g., United States v. Silvestre-Gregorio, 983 F.3d 848, 852 (6th

Cir. 2020).  Those factors include (1) "the private interest that will be affected by the official

action," (2) "the risk of an erroneous deprivation of such interest," and (3) "the Government's

interest, including the function involved and the fiscal and administrative burdens that the

additional or substitute procedural requirement would entail."  Mathews, 424 U.S. at 335.

In support of immediate release, Navarro-Rivera argues that his denial of a bond hearing

infringed on his liberty interest and removed "judicial oversight of custody decisions, increasing

[the] risk of arbitrary and indefinite detention." (ECF No. 6-2 at PageID 34.) He asserts that a bond hearing would also be an appropriate remedy, as such hearings balance Respondents' "interest in immigration enforcement with individual liberty interests." (Id.) Respondents argue that, if § 1226(a) applies here, "the appropriate remedy is" a bond hearing, not immediate release, because the IJ should determine "whether Petitioner is a flight risk or a danger to the community," in light of his criminal history. (ECF No. 11 at PageID 60.)

Here, because § 1226(a) applies to Navarro-Rivera, he is owed the process given to him under that provision. As for the Mathews factors, (1) Navarro-Rivera has a strong private liberty interest, (2) there is a high risk of erroneous deprivation if no IJ evaluates his risk of flight and danger to the community and, (3) given Navarro-Rivera's liberty at the time he was apprehended, it will be difficult for the Government to demonstrate an interest in his detention. Indeed, before he was apprehended, Navarro-Rivera was present in the United States for ten years, lived in both Pennsylvania and West Tennessee, and obtained Special Immigrant Juvenile Status. (ECF Nos. 8 at PageID 41; 11 at PageID 52; 11-2 at PageID 65, 67.) These facts indicate his ties to the United States and his expectation that he would remain free from government custody. Also, he was not otherwise incarcerated when ICE detained him, despite his record of past arrests. (ECF No. 11 at PageID 53 ("Petitioner has not been convicted of any of the crimes for which he has been arrested.").)

As a result, his detention without bond violated his liberty interest, which cannot be casually tossed aside. Thus, Navarro-Rivera is entitled to immediate release. See Villafranca Lara v. Ladwig, No. 26-CV-02079-SHL-tmp, 2026 U.S. Dist. LEXIS 29378, at *24 (W.D. Tenn. Feb. 12, 2026) ("Because ICE purported to detain [petitioner] under § 1225(b)(2)(A), which includes no provision for a bond hearing, the Court will not now order a bond hearing under

§ 1226(a).").  Accordingly, his detention under the mandatory detention frameworks of either §

1225(b)(2)(A) or § 1226(c) violates his due process rights.  Therefore, consistent with the

Court's decision in <u>Godinez-Lopez</u>, and after consideration of the record, Navarro-Rivera's

Petition is **GRANTED**.[4]

## IV.    Attorney's Fees and Costs

Although not argued in detail in the briefs, Navarro-Rivera seeks attorney's fees and

costs under the EAJA, 28 U.S.C. § 2412.  (ECF No. 2 at PageID 26.)  That provision allows a

court to award "reasonable fees and expenses of attorneys, in addition to the costs which may be

awarded pursuant to subsection (a), to the prevailing party in any civil action brought by or

against the United States . . . ."  28 U.S.C. § 2412(b).  "A claim for attorney's fees and related

nontaxable expenses must be made by motion . . . ."  Fed. R. Civ. P. 54(d)(2)(A).  "In addition to

the requirements of Fed. R. Civ. P. 54(d)(2)," the Court's Local Rules impose supplemental

requirements on motions for attorney's fees and costs, including but not limited to affidavits of

counsel of record and another attorney in the community.  <u>See</u> LR 54.1(b).

However, 28 U.S.C. § 2412(d)(1)(B) states that a motion for attorney's fees is due

"within 30 days of final judgment."  Under the EAJA, a "final judgment" is a judgment that is

final and not appealable; here, that time occurs sixty days <u>after</u> the judgment, as that is the

deadline for appeal.  <u>Melkonyan v. Sullivan</u>, 501 U.S. 89, 96 (1991).  Therefore, a motion for

costs and attorney's fees ripens ninety days after judgment here, and should not be considered

---

[4] Because the Petition is granted on other grounds, the Court need not reach the questions of whether Navarro-Rivera's detention violated the Fourth or Eighth Amendments, or whether he is entitled to class-based relief under <u>Maldonado-Bautista v. Santacruz</u>.  (ECF No. 16.)  Thus, Navarro-Rivera's Motion to Enforce Class Declaration and Order Reclassification of Detention (ECF No. 16) is **DENIED AS MOOT**.

earlier.  See Castaneda-Mondragon, 25-cv-03044-SHL-tmp at ECF No. 15 (W.D. Tenn. Jan. 5, 2026).

In accordance with 28 U.S.C. § 2412(d)(1), Federal Rule 54(d), and Local Rule 54.1, the request in the Petition for an award of attorney's fees and costs is held in abeyance until **ninety days after** the entry of final judgment.  If Navarro-Rivera still seeks attorney's fees and costs, he must file a motion with supporting affidavits in accordance with Local Rule 54.1(b) by the above ninety-day deadline.

### CONCLUSION

For the reasons stated above, the Petition is **GRANTED**.  Respondents are ordered to release Navarro-Rivera immediately.  Respondents are **ENJOINED** from pursuing Navarro-Rivera's detention under 8 U.S.C. § 1225(b)(2)(A) or 8 U.S.C. § 1226(c)(1)(E) for pre-Laken Riley Act conduct.  Respondents are further **ORDERED** to file a Status Report with the Court on or before **March 2, 2026**, to certify compliance with this Order.

**IT IS SO ORDERED,** this 24th day of February, 2026.

s/ Sheryl H. Lipman
SHERYL H. LIPMAN
CHIEF UNITED STATES DISTRICT JUDGE